UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,          )
                                   )
   Plaintiff,                     )
                                   )
v.                                 )          No. 4:22 CR 612 JAR
                                   )
HEATHER MARTY,                     )
                                   )
   Defendant.                     )

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

## 1. PARTIES:

The parties are the defendant Heather Marty, represented by defense counsel Lucille Liggett, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

## 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 1 and 2 of the Indictment, the government agrees that no further federal prosecution will be brought in this District relative to the defendant's transportation of a stolen vehicle in interstate commerce on January 31, 2022 and participation in operating a chop shop from October 2021 through June 20, 2022, of which the Government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that neither party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a).

3. **ELEMENTS:**

The defendant admits to knowingly violating Title 18, United States Code, Sections 2312 and 2322(a)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crimes are:

**COUNT 1**
**(Transporting a Stolen Vehicle in Interstate Commerce)**

*One*, a Dodge Ram 1500 pickup truck, VIN 1C6RR7LT4ES407544 was stolen;

*Two*, after the vehicle was stolen, defendant moved it across a state line; and

*Three*, at the time she moved the vehicle across a state line, defendant knew it was stolen.

**COUNT 2**
**(Operating a Chop Shop)**

*One*, defendant operated, maintained, and conducted operations in;

*Two*, a chop shop, as defined by Title 18, United States Code, Section 2322(b)

4. **FACTS:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

2

In 2021, defendant was living at 2931 North Jefferson Avenue in the City of St. Louis. The building at this location is a one-story light industrial warehouse with an overhead garage door opening into a large bay area capable of storing several vehicles. Accessed through a hallway are several office rooms, one of which defendant converted into a makeshift bedroom. A heavily overgrown fenced lot sits behind the building. Defendant referred to the building as the "Warehouse." Although the Warehouse had no occupancy permit, the owner of the building allowed defendant to live there.

Defendant used the Warehouse to receive and conceal stolen motor vehicles where they were disassembled and dismantled to sell vehicle parts in interstate commerce. In a series of law enforcement actions, various stolen vehicles were recovered from the Warehouse, as further described below.

On October 30, 2021, St. Louis Metropolitan Police Department (SLMPD) officers responded to the Warehouse related to a call regarding a suspected stolen vehicle. The officers located a stolen 2007 Yamaha motorcycle (valued at $3,000) in front of the Warehouse. Defendant was inside the Warehouse, said she lived there, but refused to open the door to talk to the officers. The owner of the Warehouse arrived on the scene and confirmed he was allowing defendant to live on his property.

On November 18, 2021, SLMPD officers again on patrol noticed a 2009 Ford Ranger pickup truck ($11,200) parked in front of the Warehouse. They stopped, ran the plate, and discovered it was reported stolen five days earlier. The officers also observed a 2004 F-450 pickup truck ($40,000) parked near the Warehouse. The locks and ignition had been punched out of the F-450, and its catalytic converter had been removed. The owner of the F-450 was contacted, who was not yet aware that his vehicle had been stolen earlier that day.

3

The officers gained entry into the Warehouse and found four more vehicles and a motorcycle which had been stolen and in various stages of disassembly. Specifically, a 2009 Pontiac G6 ($5,000), 2006 F-350 ($16,000), 2000 Ford Excursion ($8,500), 2011 Dodge Ram pickup truck ($30,000) and 2016 Honda motorcycle ($4,000).

On November 24, 2021, SLMPD detectives obtained a search warrant for the Warehouse based on the preceding events and information from a confidential informant that defendant and others were stealing automobiles, taking them to the Warehouse, and selling their parts. The warrant was executed on December 1, 2021. Defendant and two males were in the Warehouse at the time of entry. In the bay area the officers found three stolen pickup trucks, specifically a 2005 F-350 ($15,000), a 2006 F-250 ($6,500), and a 2006 F-250 ($4,000).

Defendant was arrested. Her cellphone was searched. The phone contained an instant message conversation defendant had concerning the November 18, 2021 search of the Warehouse. Defendant was concerned that the owner was going to tell the police that she was responsible for the stolen vehicles and discussed telling the owner to lie to the police, because it looked like a "chop shop."

On January 6, 2022, victim B.T. left his 2014 Dodge Ram 1500 pickup truck VIN # 1C6RR7LT4ES407544 ($28,325) running in the driveway of his home on Yaffberry Street in the City of St. Louis, when it was stolen. On January 29, 2022, this vehicle was discovered by SLMPD Detective Simpher in the parking lot of the Casino Queen located in East St. Louis, Illinois. Detective Simpher obtained surveillance video which showed defendant arriving at the Casino Queen driving the Dodge Ram, and then checking into the hotel. Detective Simpher arrested defendant after she left her room and was approaching the pickup truck. A search of the

4

vehicle revealed a trash bag containing nine license plates, two of which belonged to stolen vehicles. In addition, six keys to unknown vehicles were discovered inside the Dodge Ram.

Using historical location data for the time period of January 26, 2022 through January 31, 2022 on defendant's cellphone, Detective Simpher was able to obtain surveillance video that placed defendant in the stolen Dodge Ram in the St. Louis, Missouri area from January 26 through 28, 2022. The historical location data also placed defendant at the site of four thefts (and one attempt) of catalytic converters, four burglaries, and another stolen vehicle all occurring in the St. Louis, Missouri area.

Detective Simpher also obtained a search warrant for the cellphone defendant possessed at the time of her arrest on January 29, 2022. He found several messages in which defendant is discussing stealing vehicles and catalytic converters with other people.

On June 20, 2022, SLMPD detectives found defendant and a male in a pickup truck parked in the lot of the Warehouse. In the bed of the truck was a 2022 ATM Duke motorcycle ($20,000) which had been stolen off a St. Louis City street hours earlier.

On July 13, 2022 Detective Simpher went back to the Warehouse after receiving information from a confidential informant that defendant was again using the location to "chop" stolen vehicles. Although defendant was not present at the time, Detective Simpher discovered a 1991 F-250 ($15,000), a 2017 Kia Sportage ($15,000), and a 2017 Kia Optima ($30,000), all stolen and in the initial stages of disassembly in the bay area of the Warehouse.

## 5. **STATUTORY PENALTIES:**

The defendant fully understands that the maximum possible penalty provided by law for the crimes to which the defendant is pleading guilty for is imprisonment of not more than 10 years on Count 1 and 15 years on Count 2. A fine of not more than $250,000, or both such

5

imprisonment and fine may be imposed on both counts.  The Court may also impose a period of supervised release of not more than 3 years on both counts.

**6. U.S. SENTENCING GUIDELINES: 2022 MANUAL:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category.  The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

    **a.  Chapter 2 Offense Conduct:**

The counts group together pursuant to Section 3D1.2.

    **(1)  Base Offense Level:**  The parties agree that the base offense level is 8, as found in Section 2B6.1(a).

    **(2)  Specific Offense Characteristics:**  The parties agree that 10 levels should be added pursuant to Section 2B6.1(b)(1) cross-referenced to Section 2B1.1(b)(1)(E) as the loss exceeded $150,000 but was less than $250,000.  Two levels should be added pursuant to Section 2B6.1(b)(2) as defendant was in the business of receiving and selling stolen property.

    **b.  Chapter 3 Adjustments:**

    **(1)  Acceptance of Responsibility:** The parties agree that two levels should be deducted pursuant to Section 3E1.1(a) because the defendant has clearly demonstrated acceptance of responsibility.  Further, the Government, under the facts known at present, will make a motion at the time of sentencing for an extra 1 level reduction based on the defendant's timely notification of his intention to plead guilty.  The parties agree that the defendant's eligibility for this deduction is based upon information presently known.  If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the

6

defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may decide not to file a motion for the extra 1 level reduction and may present evidence to the court, and argue that the defendant should not receive all or part of the 2 level deduction pursuant to Section 3E1.1(a), without violating the plea agreement.

**c. Estimated Total Offense Level**: The parties estimate that the Total Offense Level is 17.

**d. Criminal History**: The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**e. Effect of Parties' U.S. Sentencing Guidelines Analysis**: The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial

7

motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2)  Sentencing Issues:**  In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:**  The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:**  The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. *OTHER:***

**a. Disclosures Required by the United States Probation Office:**  The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to

8

sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.   These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing.  Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration

and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has

completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

11

## 12.  <u>NO RIGHT TO WITHDRAW GUILTY PLEA</u>:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant

understands that there will be no right to withdraw the plea entered under this agreement, except

where the Court rejects those portions of the plea agreement which deal with charges the

government agrees to dismiss or not to bring.

6/12/23
Date

JOHN J. WARE
Assistant United States Attorney

6/12/23
Date

HEATHER MARTY
Defendant

6/12/23
Date

LUCILLE LIGGETT
Attorney for Defendant